# United States Bankruptcy Court for the
## Southern District of Georgia

FILED

2006 FEB 23  PM 4: 29

U.S. BANKRUPTCY COURT
SAVANNAH, GA

IN RE:

Case No. 98-50250

Rhonda C. Harris

_____ Debtor(s) _____ /

## MOTION FOR THE RECOVERY OF UNCLAIMED FUNDS

COMES NOW NCO Financial Systems, Inc, by and through its duly appointed attorney in fact, Dilks & Knopik, LLC, ("Applicant") and hereby petitions the Court for $2,609.65, which is the sum of all monies being held in the registry of this court as unclaimed funds, which are due to TAPR VIII, LP, creditor. A dividend check in the amount totaling $2,609.65 was not negotiated by the creditor and the Trustee, pursuant to 11 U.S.C. Section 347(a), delivered the unclaimed funds to the Clerk, US Bankruptcy Court.

1.     The creditor did not receive the dividend check in the above case for the following reason:

TAPR VIII, LP is a bad debt portfolio owned by Commercial Financial services, Inc. (CFS). Subsequently, Commercial Financial Services, Inc. went bankrupt in 1998. Creditrust Corporation purchased all of Commercial Financial Services, Inc.'s financial collection accounts out of bankruptcy in 2001, as evidenced by exhibits A & B. Subsequently, Creditrust Corporation merged with and into NCO Portfolio Management, Inc., as evidenced by exhibit C. NCO Portfolio Management, Inc. is a wholly owned subsidiary of NCO Group, Inc., as evidenced by exhibit D. Likewise, NCO Financial Systems, Inc. is a wholly owned subsidiary of NCO Group, Inc., as evidenced by exhibit D. NCO Financial Systems, Inc. is collecting the unclaimed funds on behalf of NCO Group, Inc., as the operating segment and wholly owned subsidiary of NCO Group, Inc. Joshua Gindin is the Executive Vice President and General Counsel of NCO Group, Inc., and the Secretary and General Counsel of NCO Financial Systems, Inc., as evidenced by exhibit D, E & F.

2.     The claimant's current mailing address, phone and social security/tax identification number are:

NCO Financial Systems, Inc
Joshua Gindin - Executive VP and General Counsel
507 Prudential Road
Horsham, PA 19044
215-441-2359
SSN/TIN: 23-1670927

3.     Furthermore, Applicant has no knowledge that this claim has been previously paid or that any party other than the claimant is entitled to these funds.

4.     Dilks & Knopik, LLC has been appointed by NCO Financial Systems, Inc, claimant, as its Attorney-in-Fact who is duly authorized by the attached original Power of Attorney

and supporting documentation to apply for these funds. Dilks & Knopik, LLC is acting through its Attorney, David W. Adams, Attorney, of Ellis, Painter, Ratterree & Adams LLP to recover these funds on behalf of NCO Financial Systems, Inc.

5.      Applicant is entitled to and now seeks to recover the funds from the Court's Registry.

Wherefore upon final consideration of the matter, Applicant prays that, upon proper notice to the U.S. Attorney's Office, the Court order that a check in the amount of $2,609.65 made payable to NCO Financial Systems, Inc c/o Dilks & Knopik, LLC, PO Box 2728, Issaquah, WA 98027 be issued from the Court's Registry.

Dated: __02/23/06__          Respectfully Submitted: _____

Drew K. Stutzman
GA Bar No. 000098
Ellis, Painter, Ratterree & Adams LLP
PO Box 9946
Savannah, GA 31412
Ph: 912-233-9700
Fx: 912-233-2281

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA

RE: )
Rhonda C. Harris )
)
)
)
Debtor(s) )

Case: 98-50250

AUTHORITY TO ACT
Limited Power of Attorney
**Limited to one Transaction**

1. **NCO Financial Systems, Inc** with a tax identification number of 23-1670927, ("CLIENT"), appoints **Dilks & Knopik, LLC** ("D&K"), as its lawful attorney in fact for the limited purpose of recovering, receiving and obtaining information pertaining to the outstanding tender of funds in the amount of **$2,609.65** (the "UNCLAIMED FUNDS"), including the right to collect on CLIENT's behalf any such funds that are held by a governmental agency or authority.

2. CLIENT grants to D&K the authority to do all things legally permissible and reasonably necessary to recover or obtain the UNCLAIMED FUNDS held by the governmental agency or authority. This limited authority includes the right to receive all communications from the governmental agency or authority and to deposit checks payable to CLIENT for distribution of the UNCLAIMED FUNDS to CLIENT, less the fee payable to D&K pursuant to and in accordance with its agreement with CLIENT.

3. D&K may not make any expenditure or incur any costs or fees on behalf of CLIENT without CLIENT's prior written consent.

4. This Authority to Act shall become effective on the below signed date and shall expire 180 days from the date hereof or upon collection of the aforementioned unclaimed funds.

Sign:_____     Date: **SEP 1 6 2005**_____, 20____
Joshua Gindin - Executive VP and General Counsel

| Tape or Staple Signatory's Business Card Here | Affix Corporate Seal Below<br>Or if Corporate Seal Unavailable Sign Affidavit Below: |
|---|---|
| | *AFFIDAVIT IF CORPORATE SEAL IS UNAVAILABLE*<br>*BE IT ACKNOWLEDGED, that the undersigned hereby says under oath that the corporate seal for NCO Financial Systems, Inc is presently unavailable to the undersigned.*<br>*Signature and Title_____* |

STATE OF **PENNSYLVANIA**)            COUNTY OF **MONTGOMERY**)

On this 16th day of _____September_____, 2005, before me, the undersigned Notary Public in and for the said County and State, personally appeared Joshua Gindin known to me to be the person described in and who executed the foregoing instrument, and who acknowledged to me that (circle one) he/she did so freely and voluntarily and for the uses and purposes therein mentioned.

WITNESS my hand and official seal.

( *Notary Seal* )

NOTARY PUBLIC _Mary Ann Armstrong_

My Commission expires **5/21/09**

Commonwealth of Pennsylvania
**NOTARIAL SEAL**
MARY ANN ARMSTRONG, NOTARY PUBLIC
Horsham Township, Montgomery County
My Commission Expires May 21, 2009

# NCO

G  R  O  U  P

**Joshua Gindin, Esquire**
Executive Vice President
& General Counsel

**NCO Group, Inc.**

507 Prudential Road
Horsham, PA 19044

Phone: [800] 220-2274, Ext. 2359
Phone: [215] 441-2359
Fax: [215] 441-3931

josh.gindin@ncogroup.com



**FILED**

**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**JUL 30 2002**

**PATRICK FISHER**
**Clerk**

In re: COMMERCIAL FINANCIAL
SERVICES, INC.,

        Debtor,

_____

BANK ONE, OKLAHOMA, N.A.,

        Appellant,

v.

COMMERCIAL FINANCIAL
SERVICES, INC.; UNSECURED
CREDITORS LIQUIDATING
TRUSTEE,

        Appellees.

No. 01-5190
(D.C. No. 00-CV-416-B)
(N.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BARRETT**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this

_____

[*]     This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
the terms and conditions of 10th Cir. R. 36.3.

Exhibit A

Page 1 of 2

appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal requires us to determine whether the district court erred in affirming a judgment of the bankruptcy court denying appellant Bank One's "Motion for Relief from Automatic Stay and for Order Directing Abandonment." Upon appeal of the bankruptcy court's order, the district court referred the matter to a magistrate judge who recommended that Bank One could not exercise a right to setoff consistent with Oklahoma law and that it did not qualify for Oklahoma's statutory banker's lien. The district court adopted the report and recommendation of the magistrate judge in its entirety. After our review of the pertinent law, the briefs of the parties, and the record, we reverse.

Debtor Commercial Financial Services, Inc. (CFS) is an Oklahoma corporation that was engaged in the business of acquiring portfolios of defaulted credit card receivables and small balance consumer loans and then servicing and collecting the delinquent accounts.[1] CFS financed this operation by transferring the receivables to limited partnerships or corporations it established and then in turn transferring the receivables to a trust. The trust then issued notes and certificates secured by the receivables to investors who profited through collection of the receivables. Revenue from the notes and certificates provided operating capital for CFS, and CFS collected fees from the trusts in return for servicing the receivables.

In order to facilitate collection of the receivables, CFS opened accounts at Bank One. The account at issue here was titled "CFS Inc. as Servicer for CFS TAPR II LTD & TAPR III LTD," Aplt's App. at 532, and was described by an official of Bank One as a demand deposit account with a lockbox feature ("the account"). That is, there was a particular post office zip code attached to the account. When payments came into the

---

[1]     These background facts are taken from the bankruptcy court's order.

Exhibit A
Page 2 of 2

FILED

01 MAY 31 PM 3: 10

TIMOTHY R. WALBRIDGE, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re: )
)  Case No. 98-05162-R
**COMMERCIAL FINANCIAL** )  Chapter 11
**SERVICES, INC., and** )
)  Case No. 98-05166-R
CF/SPC NGU, INC., )  Chapter 11 Jointly Administered with
)  Case No. 98-05162-R
Debtors and Debtors-in-Possession. )
)  Honorable Dana L. Rasure

## DISCLOSURE STATEMENT PURSUANT TO
## SECTION 1125 OF THE BANKRUPTCY CODE (CFS)

Dated: May 31, 2001

Larry M. Wolfson
Robert R. Stauffer
Jerry L. Switzer, Jr.
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
PH:   (312) 222-9350
FAX:  (312) 840-7354

Neal Tomlins, OBA No. 10449
Ronald E. Goins, OBA No. 3430
TOMLINS & GOINS, P.C.
2100 South Utica Avenue
Suite 300
Tulsa, Oklahoma 74114
PH:   (918) 747-6500
FAX:  (918) 749-0874

# Exhibit B
# Page 1 of 3

## TABLE OF CONTENTS

**RECOMMENDATION OF CFS AND THE COMMITTEES** . . . . . . . . . . . . . . . . . . . . . . -4-

I.   **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    A.   Explanation of Chapter 11, Overview of the Plan, the Voting Process and
         Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    B.   Disclaimers and Endorsements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

II.   **SUMMARY OF THE PLAN** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-

III.   **GENERAL INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
    A.   CFS's Pre-Petition Business Operations . . . . . . . . . . . . . . . . . . . . . . . . -11-
        1.   Formation of CFS and Nature of Its Business . . . . . . . . . . . . . . . . . . . . -11-
        2.   The Securitizations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
        3.   BT Warehouse Facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        4.   Senior Unsecured Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-
        5.   Oral Roberts University's "Put" Option . . . . . . . . . . . . . . . . . . . . . . . . -14-
        6.   The Anonymous Letter and its Effects on CFS . . . . . . . . . . . . . . . . . . . -14-
    B.   Main Events During the Chapter 11 Case. . . . . . . . . . . . . . . . . . . . . . . . -15-
        1.   CFS's Unsuccessful Efforts to Sell Its Operations as a Going Concern
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
        2.   WARN Act Class Actions Adversary Proceedings . . . . . . . . . . . . . . . . -17-
            (a)   Fleming Adversary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
            (b)   Snider Adversary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        3.   Interim Agreement Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-
        4.   Orderly Transition of Servicing to Back-Up/Successor Servicers . . . . . -19-
        5.   CFS's Liquidation and Other Sales of Assets . . . . . . . . . . . . . . . . . . . . -19-
        6.   CFS Kids, Inc . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
        7.   Rejection of Forward Flow Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
        8.   Applicability of Section 510(b) of the Bankruptcy Code . . . . . . . . . . . -20-
        9.   Plan Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
        10.   BT Warehouse Lenders' Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
        11.   Investigation of Third Party Claims and Defenses . . . . . . . . . . . . . . . . -22-
    C.   Additional Events During the Chapter 11 Case . . . . . . . . . . . . . . . . . . . -23-
        1.   Appointment of CFS's Professionals . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
        2.   Appointment of the Committees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-
        3.   Initial Court Orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -28-
        4.   Post-Petition Financing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
        5.   Extensions of Time to Assume or Reject Leases. . . . . . . . . . . . . . . . . . -29-
        6.   Claims Process and Bar Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-
            a.   Schedules and Statement of Financial Affairs. . . . . . . . . . . . . . -29-
            b.   Bar Date. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -29-

Exhibit B
Page 2 of 3

workforce employed and available for a smooth transition to new ownership of CFS's operations, and otherwise allow the process to continue. The OCUC contends that during these negotiations, the parties reached the so-called Interim Agreement whereby a significant portion of CFS funds (approximately $37 million) would be set aside and held for distribution solely to non-ABS claimants to compensate them for the substantial operating losses that were being incurred by CFS as it serviced the Accounts on behalf of the ABS Trusts. In contrast, however, the ABS Committee contends that no such agreement was ever reached by the parties, and prior to documentation of any such agreement or its consideration by the Court, negotiations with Worldwide came to an end, company operations were shut down and efforts to consummate the Interim Agreement were abandoned.

Once the dispute arose between the two Committees regarding the purported Interim Agreement, the OCUC commenced discovery against parties in interest purportedly to determine whether the Interim Agreement was in fact ever reached and whether it was enforceable. After the commencement of discovery, the Committees agreed to adjourn that discovery from time to time as they sought to negotiate a global agreement to provide for the equitable division of Estate funds and to resolve the pending litigation. The Committees and CFS resolved the Interim Agreement dispute as part of a larger compromise described in the Plan, and all claims relating to the Interim Agreement will be deemed abandoned, released and dismissed.

4.    **Orderly Transition of Servicing to Back-Up/Successor Servicers**. CFS ceased operations (except for transition servicing) when sale efforts terminated on June 23, 1999. Upon ceasing servicing operations, CFS took steps to terminate its duties as servicer of the Accounts held by the ABS Trusts under the terms of the applicable servicing agreements. Under the servicing agreements, the ABS Trustees, in their additional capacity as Back-Up Servicers (and/or their nominees), were contractually obligated to provide back-up servicing of the Accounts. On June 30, 1999, the Court granted CFS's emergency motion to, among other things, reject the servicing and related agreements effective as of June 23, 1999. Thereafter, pursuant to the back-up servicing arrangements already in place under the servicing agreements, and pursuant to an order entered by the Court on July 27, 1999, which, among other things, approved a joint stipulation among CFS and the ABS Trustees regarding a transition of servicing of the Accounts, CFS turned servicing of the Accounts over to the ABS Trustees and agreed to provide certain transition services to the ABS Trustees in exchange for a transition fee.

5.    **CFS's Liquidation and Other Sales of Assets**. Following the termination of CFS's operations and cessation of servicing, CFS commenced efforts to liquidate its tangible and intangible assets. Subject to various orders entered by the Court, CFS conducted auction sales of CFS's (a) owned portfolio of Accounts to Creditrust Corporation ("Creditrust") for $26,750,000; (b) Oklahoma City facility to Farmers Insurance Group for $3,100,000; (c) share and interest in CFS International Limited ("CFSI") to Olympia Capital ASA for approximately $5,740,170 (consisting of the payment of an intercompany indebtedness owed by CFSI to CFS of approximately $3,637,093 and additional cash proceeds of approximately $2,103,077); (d) surplus office furniture and certain telephone equipment to Eagle Management Group for $67,350; (e) surplus office furniture and equipment to CompOne Services, Ltd

**Exhibit B**

**Page 3 of 3**

*Ajulie*

**FILED**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

AUG 1 3 1999

TIMOTHY R. WALBRIDGE, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

In re:                                    )    Case No. 98-05162-R
                                          )    Chapter 11
COMMERCIAL FINANCIAL                      )
SERVICES, INC. and                        )    Case No. 98-05166-R
                                          )    Chapter 11 Jointly Administered
CF/SPC NGU, INC.,                         )    with Case No. 98-05162-R
                                          )
Debtors and Debtors-in-Possession.        )

## ORDER AUTHORIZING SALE OF FINANCIAL ASSETS (CFS)

This matter came on for hearing before the undersigned United States Bankruptcy Judge on the 5th day of August, 1999, on the "Motion To Set Procedures and for Authority to Sell Financial Assets (CFS)" (the "Motion") filed on July 20, 1999. In the Motion, Commercial Financial Services, Inc. ("CFS") seeks authority to sell, free and clear of liens, claims and encumbrances, virtually all of the credit card receivables that it owns outright (the "Financial Assets") and that are commonly referred to as the CFS-owned portfolio, all as more specifically identified in the Motion.

**THE COURT FINDS THAT:**

1.    On July 16, 1999, counsel to CFS mailed a copy of the Motion to all parties on Master Service List No. 19 dated July 16, 1999 as required by the Court in Case Management Order #1 dated January 6, 1999. The Motion was also served upon the United States Trustee, counsel to the two official committees in this case, all parties owning or claiming a lien or security interest (or any interest whatsoever) in the Financial Assets, and persons who had then expressed an interest in purchasing the Financial Assets.

2.    On July 27, 1999, CFS advertised the sale of the Financial Assets proposed in the Motion in the National Edition of The Wall Street Journal on page B21.

CREDITRUST SALE ORDER
AUGUST 12, 1999

DOCKETED____8-13____, 19_99_.
Clerk, U.S. Bankruptcy Court
Northern District of Oklahoma

**Exhibit C**
**Page 1 of 6**

*1145*

3.    Such notice meets the requirements of Federal Rules of Bankruptcy Procedure 2002(a) and (i), 6004(c) and other applicable rules and was appropriate, adequate and sufficient under the circumstances of this case.

4.    Two objections to the sale of the Financial Assets have been filed herein by Bank of America, N.A. ("BOA") and William Kuntz, III.  This Court held a hearing at which evidence was presented and the arguments of counsel were heard.

5.    The terms, conditions and manner of sale proposed in the Motion and in the written Financial Assets Sale Agreement (the "Agreement") between CFS and Creditrust Corporation ("Creditrust") attached to the Motion as Exhibit 1 and placed into evidence, as clarified by statements of CFS and its counsel on the record at the hearing, are fair, reasonable and in the best interests of the CFS estate and its creditors.  In particular, the Court finds reasonable, and will, therefore, employ at the sale hearing, the following procedures:

(a)    any competing bids must be on the same terms and conditions as, or more favorable terms and conditions than, the Agreement;

(b)    any competing bidders must be ready, willing and able to close the purchase within five business days after this Court's order approving the sale becomes a Final Order (as defined in the Agreement);

(c)    any competing bids must not be contingent upon financing or third party approval (other than vendor approval, if and as necessary, as described in Paragraph 7(d) of the Motion);

(d)    any competing bids must be in increments of at least $50,000, so that any bidder other than Creditrust would be required to bid 4.647% of the Approximate Current Balance plus $50,000, with subsequent bids continuing in $50,000 increments;

Exhibit C
Page 2 of 6

(e)    so that the Court and all interested parties will know at the time of the sale hearing whether there exist any vendor approval problems as to any potential bidders, any party wishing to bid at the sale hearing must have provided CFS's undersigned counsel with a higher or better offer of at least 4.647% of the Approximate Current Balance plus $50,000, in writing (with a copy to Creditrust and its counsel), no later than 10:00 a.m. on August 2, 1999, and such offer must have been accompanied by a certified check or cashier's check for $1,705,000 payable to CFS as an earnest money deposit, which funds shall be held in escrow by Jenner & Block and shall be payable to CFS in accordance with the deposit terms contained in the Agreement; and

(f)    if Creditrust is not the successful bidder, and the Financial Assets are sold to a higher bidder, CFS shall pay Creditrust a break-up fee of $25,000 from the proceeds of the sale of the Financial Assets as an administrative expense pursuant to 11 U.S.C. § 503(b)(3)(D).

6.    The parties bidding at the sale, Creditrust and Residential Funding Corporation, a subsidiary of General Motors Acceptance Corp. ("GMAC-RFC"), have dealt with CFS on an arms-length basis.  CFS and Creditrust have negotiated in good faith.  CFS has not negotiated with GMAC-RFC.

7.    Creditrust and GMAC-RFC have complied with all of the auction procedures established by the Court and were the only parties who qualified to bid at the auction sale of the Financial Assets conducted by the Court.

8.    The proposed sale of Financial Assets is in the best interests of the CFS bankruptcy estate and its creditors.

9.    GMAC-RFC has bid $25,941,546.23 for the Financial Assets and the next bid shall be in the amount of $26,000,000.

Exhibit C
Page 3 of 6

10.     There was no agreement or understanding between Creditrust and GMAC-RFC at the time of the Court conducted auction (a) to control the sale price of the Financial Assets, or (b) to transfer the Financial Assets or some part of them, from the winning bidder to the losing bidder.

11.     Creditrust disclosed that if it were to be the winning bidder at the Court conducted auction it might decide to resell some of the Financial Assets to parties in the business of purchasing similar financial instruments, including, without limitation, to GMAC-RFC.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:**

A.      Notice of the hearing on the Motion is approved in all respects.

B.      The sale procedures proposed by CFS are approved.

C.      The Motion is granted.  While no person was present at the hearing to argue the objection of William Kuntz, III, the Court considered the objection and such objection is overruled.  The limited objection of BOA is reflected in the terms of this Order pursuant to the agreement of CFS.  CFS is hereby authorized to sell the Financial Assets to Creditrust as high bidder in the amount of $26,750,000, free and clear of all liens, claims and encumbrances, with liens, claims and encumbrances, if any, to attach to the proceeds.  All closing costs shall be paid by CFS at closing.  The sale of the Financial Assets shall be on an AS IS, WHERE IS basis, with no representations or warranties of any kind except as expressly set forth in the Agreement.

D.      The terms, conditions and manner of sale set forth in the Motion and the Agreement, as supplemented by statements from CFS and its counsel on the record at the hearing, are hereby approved by this Court.

E.      CFS shall execute and deliver such documents, instruments and agreements as are reasonably necessary to convey and/or assign all of its right, title and interest in and to the Financial Assets to Creditrust for the sum of $26,750,000, subject to

Exhibit C
Page 4 of 6

adjustments as set forth in the Agreement, and CFS is authorized to execute and deliver such other documents, instruments and agreements as are contemplated in the Agreement.

F.    Creditrust is a good faith purchaser within the meaning of 11 U.S.C. § 363(m) and is purchasing the Financial Assets in good faith and for adequate consideration.

G.    In the event Creditrust does not close the transactions described in the Agreement, CFS is authorized to sell the Financial Assets to GMAC-RFC for the amount of $26,700,000 without further Order of this Court.

H.    This Court shall retain jurisdiction to implement and enforce the Agreement and the delivery of the Financial Assets.

I.    CFS shall be responsible for all state and local transfer taxes arising from the sale of the Financial Assets, if any.

J.    The Agreement is binding in all respects upon any trustee appointed in the CFS bankruptcy case, whether under Chapter 7 or Chapter 11 of the Bankruptcy Code.

K.    Pursuant to the Court's "Order Approving Agreement and Continuing in Part Bank Of America N.A.'s Second Motion for Relief Under 11 U.S.C. § 363(e)" filed on August 6, 1999, an amount of the sale proceeds arising from the sale of the Financial Assets equal to 28% of the net sale proceeds received by CFS shall be deposited into a segregated CFS bank account. Such segregated CFS bank account shall remain separate and distinct from other CFS bank accounts and funds, and CFS shall not use the funds in such segregated account, until the date 14 days after the Court rules on the pending Motion to Dismiss in adversary case No. 98-0356-R.

L.    The Court's findings of fact and conclusions of law dictated on the record at the sale hearing are incorporated herein by reference.

M.    Nothing contained in any plan of reorganization (or liquidation) confirmed in this case or the order of confirmation confirming any plan of reorganization (or

Exhibit C

Page 5 of 6

liquidation) shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

DATED this ___13___ day of August, 1999

_____

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE

Order submitted by:

Larry M. Wolfson
Jay S. Geller
Joseph D. Frank
JENNER & BLOCK
One IBM Plaza
Chicago, Illinois  60611
PHONE:  (312) 222-9350
FAX:  (312) 840-7354

        AND

Neal Tomlins, OBA No. 10499
Ronald E. Goins, OBA No. 3430
TOMLINS & GOINS
A Professional Corporation
Utica Plaza Building
2100 South Utica Avenue, Suite 300
Tulsa, Oklahoma 74114
PHONE:  (918) 747-6500
FAX:  (918) 749-0874

Attorneys for Debtor and Debtor-in-Possession

Exhibit C
Page 6 of 6

## \*\* EXPEDITED SERVICE \*\*     \*\* KEEP WITH DOCUMENT \*\*

DOCUMENT CODE _11_     BUSINESS CODE _____

\#_____

Close _____     Stock _____     Nonstock _____

P.A. _____     Religious _____

Merging (Transferor) *Creditrust Corporation*

*(Md) # 3307675*

Surviving (Transferee) *M20 Portfolio Management, Inc. (De)*

ID # 003307676 ACK # 1000301064000000
LIBER: 800227 FOLIO: 1525 PAGES: 0005
CREDITRUST CORPORATION

02/22/2001  AT 08:33 A WO # 0000418334

### FEES REMITTED

| | |
|---|---|
| Base Fee: | *20* |
| Org. & Cap. Fee: | |
| Expedite Fee: | *70* |
| Penalty: | |
| State Recordation Tax: | |
| State Transfer Tax: | |
| Certified Copies: | *1 CC* |
| Copy Fee: | *10* |
| Certificates: | |
| Certificate Fee: | |
| Other: | |
| TOTAL FEES: | *100* |

Credit Card _____   Check _✓_   Cash _____

_____ Documents on _____ Checks

APPROVED BY: _____

KEYED BY: _____

COMMENT(S):

*CERTIFIED COPY MADE*

_____ Change of Name
_____ Change of Principal Office
_____ Change of Resident Agent
_____ Change of Resident Agent Address
_____ Resignation of Resident Agent
_____ Designation of Resident Agent
          and Resident Agent's Address
_____ Change of Business Code

_____ Adoption of Assumed Name
_____
_____

_____ Other Change(s) _____
_____
_____

CODE _161_

ATTENTION: _____

MAIL TO ADDRESS: _____
_____
_____

STATE OF MARYLAND
DEPT. OF ASSESSMENTS AND TAXATION
CUST ID:0000579605
WORK ORDER:0006418334
DATE:02-22-2001 12:48 PM
AMT. PAID:$100.00

Exhibit D
Page 1 of 5

02/21/2001   14:38   BLANK ROME COMISKY → 914106590517                NO.613   D003



Articles of Merger
of
CREDITRUST CORPORATION
(a Maryland corporation)
and
NCO PORTFOLIO MANAGEMENT, INC.
(a Delaware corporation)

FIRST: Creditrust Corporation and NCO Portfolio Management, Inc., being the corporations which are the parties to these Articles of Merger, do hereby agree to effect a merger of said corporations upon the terms and conditions herein set forth.

SECOND: The name of the corporation to be merged into the successor corporation is Creditrust Corporation (the "Corporation"), which is a corporation incorporated in the State of Maryland under the provisions of the Maryland General Corporation Law with its principal office in the State of Maryland located in Baltimore County, and the corporate existence of the Corporation will cease upon the effective date of the merger in accordance with the provisions of the Maryland General Corporation Law.

The Corporation owns no interest in land in the State of Maryland.

THIRD: The name of the successor corporation is NCO Portfolio Management, Inc. ("Portfolio"), which is a corporation incorporated in the State of Delaware, which was incorporated under the general law in said state on January 22, 1999, and which will continue its corporate existence under its present name pursuant to the general laws of said state.

The location of the principal office of Portfolio in the place of its organization is c/o Incorporating Services, Ltd., 15 East North Street, Dover, Delaware 19901.

The principal office of Portfolio in the State of Maryland is located in Baltimore County.

The name and the address of the resident agent of Portfolio in the State of Maryland are as follows:

Name                          Address
Michael Meringolo             1705 Whitehead Road
                              Baltimore, Maryland 21207

Portfolio qualified to do intrastate business in the State of Maryland as a foreign corporation on February 22, 2001.

FOURTH: No amendments to the charter of Portfolio are to be effected as part of the merger.

Exhibit D
Page 2 of 5

FIFTH: The authorized share structure of each of the corporations which is a party to these Articles of Merger at the time of execution thereof is as follows:

| | Creditrust Corporation | NCO Portfolio Management, Inc. |
|---|---|---|
| Total number of authorized shares of all classes | 25,000,000 Shares | 40,000,000 Shares |
| Number and par value of authorized shares of each class | 20,000,000 Shares of Common Stock, $.01 par value<br><br>5,000,000 Shares of Preferred Stock, $.01 par value | 35,000,000 Shares of Common Stock, $.01 par value<br><br>5,000,000 Shares of Preferred Stock, $.01 par value |
| Number of authorized shares without par value of each class | Not Applicable | Not Applicable |
| Aggregate par value of all shares with par value: | $250,000 par value | $400,000 par value |

SIXTH: Each issued share of stock of the Corporation shall, upon the effective date of the merger, be converted into 0.1667 shares of stock of Portfolio. No fractional shares shall be issued. Any fractional shares shall be rounded off to the nearest whole number of a share of stock of Portfolio. The outstanding shares of stock of Portfolio shall not be converted, but each said share which is issued as of the effective date of the merger shall continue to represent one issued share of stock of Portfolio.

SEVENTH: The terms and conditions of the merger herein set forth were advised, authorized, and approved by the Corporation in the manner required by its charter and the provisions of the Maryland General Corporation Law, and the said merger and the aforesaid terms and conditions were approved in the manner hereinafter set forth.

EIGHTH: The merger was duly advised by the Board of Directors of the Corporation in the following manner. Said Board of Directors of the Corporation adopted a resolution declaring that the merger of the Corporation into Portfolio is advisable on substantially the terms and conditions set forth in or referred to in said resolution. Said resolution of the Board of Directors was adopted at a meeting duly held on September 18, 2000, at which a quorum was present, and at which the Board acted by at least a majority of its members present thereat.

Exhibit D
Page 3 of 5

NINTH: The following information is provided pursuant to Section 3-301 of the Maryland General Corporation Law: The merger and the aforesaid terms and conditions were duly approved pursuant to the Corporation's Fifth Amended and Restated Plan of Reorganization which was confirmed pursuant to final order of the Bankruptcy Court of the 5th District of Maryland on January 18, 2001 (In re: Creditrust Corporation, Case No.00-5-7812-JS).

TENTH: The terms and conditions of the merger were duly advised, authorized, and approved, in respect of Portfolio, in the manner required by the charter of said corporation and by the laws of the State of Delaware, which is the state of incorporation of said corporation.

ELEVENTH: The Board of Directors of Portfolio adopted a resolution approving the proposed merger of the Corporation into Portfolio on substantially the terms and conditions set forth in or referred to in said resolution. Said resolution of the Board of Directors was adopted by a written consent signed by all of the members of the Board of Directors without a meeting.

TWELTH: The merger and the aforesaid terms and conditions were duly approved by the sole stockholder of Portfolio in the following manner. The sole stockholder entitled to vote thereon approved the same without a meeting by a written consent signed by it.

THIRTEENTH:    The effective time and date of the merger shall be upon filing.

FOURTEENTH: Effective upon the merger, the directors of Portfolio shall be divided into three (3) classes, as nearly equal in number as possible as shall be determined by the Board, known as Class I, Class II and Class III. The initial director of Class I shall be James Hunter, who shall serve until Portfolio's annual meeting of stockholders to be held in 2001. At Portfolio's 2001 annual meeting of stockholders, the director(s) of Class I shall be elected for a term of three (3) years and, after expiration of such term, shall thereafter be elected every three (3) years for three (3) year terms. The initial directors of Class II shall be James D. Resener and Jeffrey A. Schraeder, who shall serve until Portfolio's annual meeting of stockholders to be held in 2002. At Portfolio's 2002 annual meeting of stockholders, the directors of Class II shall be elected for a term of three (3) years and, after the expiration of such term, shall thereafter be elected every three (3) years for three (3) year terms. The initial directors of Class III shall be Michael J. Barrist and Alan D. Scheinkman, who shall serve until Portfolio's annual meeting of stockholders to be held in 2003. At Portfolio's 2003 annual meeting of stockholders, the directors of Class III shall be elected for a term of three (3) years and, after the expiration of such term, shall thereafter be elected every three (3) years for three (3) year terms. Each director shall serve until his or her successor shall have been elected and shall qualify, even though his or her term of office as herein provided has otherwise expired, except in the event of his or her earlier resignation, removal or disqualification.

# Exhibit D
# Page 4 of 5

IN WITNESS WHEREOF, these Articles of Merger are hereby signed for and on behalf of the Corporation by its Chief Executive Officer, who does hereby acknowledge that said Articles of Merger are the act of said corporations, and who does hereby state under the penalties for perjury that the matters and facts set forth therein with respect to authorization and approval of said merger are true in all material respects to the best of his knowledge, information, and belief; and these Articles of Merger are hereby signed for and on behalf of Portfolio by its President, who does hereby acknowledge that said Articles of Merger are the act of said corporation, and who does hereby state under the penalties for perjury that the matters and facts stated therein with respect to authorization and approval of said merger are true in all material respects to the best of his knowledge, information, and belief.

CREDITRUST CORPORATION

By _____

Name:  Joseph K. Rensin
Title:   Chief Executive Officer

Attest:

Name: Thomas A. Henning
Title:   Secretary or Assistant Secretary

Dated: February 14, 2001.

NCO PORTFOLIO MANAGEMENT, INC.

By _____

Name:  Michael J. Barrist
Title:    President

Attest:

Name: Steven L. Winokur
Title:   Assistant Secretary

Dated: February 14, 2001

Exhibit D
Page 5 of 5

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

Form 10–K

(Mark One)

| X | ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES          EXCHANGE ACT OF 1934

For the Fiscal Year ended    December 31, 2004

or

|  | TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE          SECURITIES EXCHANGE ACT OF 1934

For the transition period from          to

Commission File No.    0  21639

# NCO GROUP, INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| Pennsylvania | 23-2858652 |
| (State or other jurisdiction of | (IRS Employer Identification No.) |
| incorporation or organization) | |
| | |
| 507 Prudential Road, Horsham, Pennsylvania | 19044 |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code    (215) 441  3000

Securities registered pursuant to Section 12(b) of the Act:    None

Securities registered pursuant to Section 12(g) of the Act:    Common stock, no par value
                                                              (Title of Class)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes    | X | No  |  |

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S–K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10  K or any amendment to this Form 10  K.  |  |

Indicate by check mark whether the registrant is an accelerated filer (as defined in Rule 12b–2 of the Act).
Yes  | X | No  |  |

The aggregate market value of voting and nonvoting common equity held by nonaffiliates was approximately $774,361,507          (1).

The number of shares of the registrant's common stock outstanding as of March 14, 2005 was 32,081,981.

Exhibit E
Page 1 of 4

that a default in the note receivable is probable, an impairment charge would be recorded to reduce the notes receivable to its recoverable value. If our assessment of the recoverability of the notes receivable is incorrect, we may need to incur additional impairment charges in the future.

*Income Taxes*

We account for income taxes in accordance with SFAS No. 109, "Accounting for Income Taxes," which requires that deferred tax assets and liabilities be recognized using enacted tax rates for the effect of temporary differences between the book and tax bases of recorded assets and liabilities. SFAS No. 109 also requires that deferred tax assets be reduced by a valuation allowance, if it is more likely than not that some portion or all of the deferred tax asset will not be realized. Deferred taxes have not been provided on the cumulative undistributed earnings of foreign subsidiaries because such amounts are expected to be reinvested indefinitely.

Our balance sheet includes deferred tax assets of $15.6 and $15.3 million for the assumed utilization of federal net operating loss carryforwards acquired in the merger with Creditrust Corporation, referred to as Creditrust, and the RMH acquisition, respectively. We believe that we will be able to utilize the net operating loss carryforwards so we have not reduced the deferred tax asset by a valuation allowance. However, we have provided a $13.7 million valuation allowance against the deferred tax asset for state net operating loss carryforwards due to the uncertainty that they can be realized. The utilization of net operating loss carryforwards is an estimate based on a number of factors beyond our control, including the level of taxable income available from successful operations in the future. If we are unable to utilize the federal net operating loss carryforwards, it may result in incremental tax expense in future periods.

Our annual provision for income taxes and the determination of the resulting deferred tax assets and liabilities involve a significant amount of judgment and are based on the latest information available at the time. We are subject to audit within the federal, state and international taxing jurisdictions, and these audits can involve complex issues that may require an extended period of time to resolve. We maintain reserves for estimated tax exposures, which are ultimately settled primarily through the settlement of audits within these tax jurisdictions, changes in applicable tax law, or other factors. We believe that an appropriate liability has been established for estimated purposes, however actual results may differ from these estimates.

**Results of Operations**

The following table sets forth selected historical income statement data (amounts in thousands):

|  | For the years ended December 31, | | | | | |
|  | 2004 | | 2003 | | 2002 | |
|  | Amount | Ratio | Amount | Ratio | Amount | Ratio |
|---|---|---|---|---|---|---|
| Revenue | $ 939,797 | 100.0% | $ 753,816 | 100.0% | $ 703,450 | 100.0% |
| Payroll and related expenses | 472,915 | 50.3 | 350,369 | 46.5 | 335,405 | 47.7 |
| Selling, general and administrative expenses | 324,187 | 34.5 | 282,268 | 37.4 | 249,672 | 35.5 |
| Depreciation and amortization | 40,225 | 4.3 | 31,628 | 4.2 | 27,324 | 3.9 |
| Income from operations | 102,470 | 10.9 | 89,551 | 11.9 | 91,049 | 12.9 |
| Other expense | 17,612 | 1.9 | 17,943 | 2.4 | 17,970 | 2.5 |
| Income tax expense | 32,389 | 3.4 | 26,732 | 3.6 | 27,702 | 3.9 |
| Minority interest | 606 | 0.1 | 2,430 | 0.3 | 3,218 | 0.5 |
| Net income | $ 51,863 | 5.5% | $ 42,446 | 5.6% | $ 42,159 | 6.0% |

***Year ended December 31, 2004 Compared to Year ended December 31, 2003***

***Revenue.*** Revenue increased $186.0 million, or 24.7 percent, to $939.8 million for 2004, from $753.8 million in 2003. ARM North America, CRM, Portfolio Management, and ARM International accounted for $732.6 million, $159.0 million, $98.0 million, and $13.6 million, respectively, of the 2004 revenue. ARM North America's revenue included $63.1 million of

–40–

Exhibit 21.1

SUBSIDIARIES

| Name | Jurisdiction of Formation |
| ---- | ------------------------- |
| NCO Financial Systems, Inc. | Pennsylvania |
| NCO Funding, Inc. | Delaware |
| NCO Financial Services, Inc. | Canada |
| FCA Funding, Inc. | Delaware |
| NCO Portfolio Management, Inc. * | Delaware |
| Compass International Services Corporation | Delaware |
| NCO Financial Services (UK), Limited | United Kingdom |
| NCO Financial Systems of Puerto Rico, Inc. | Puerto Rico |
| JDR Holdings, Inc. | Delaware |
| NCO Holdings, Inc. | Delaware |
| NCO Customer Management, Inc. | Pennsylvania |
| RMH Teleservices Asia Pacific, Inc. | Delaware |
| RMH Teleservices International, Inc. | Canada |
| NCOCRM Funding, Inc. | Delaware |
| Horsham Aviation LLC | Delaware |
| NCO Support Services, LLC | Delaware |

*Owns 25 subsidiaries operating in the United States engaged in the ownership of delinquent receivables.

Note: This table does not include any subsidiary that is not required to be listed pursuant to Item 601 (b) of Regulation S-K.

</TEXT>
</DOCUMENT>

Exhibit E
Page 3 of 4

**Item 4.1**        **Executive Officers of the Registrant who are not Directors.**

| Name | Age | Position |
|------|-----|----------|
| Charles F. Burns | 44 | Executive Vice President, Business Process Outsourcing |
| Stephen W. Elliott | 43 | Executive Vice President, Information Technology and Chief Information Officer |
| Joshua Gindin, Esq. | 48 | Executive Vice President and General Counsel |
| Steven Leckerman | 52 | Executive Vice President, Chief Operating Officer – Accounts Receivable Management, North America |
| John R. Schwab | 37 | Senior Vice President, Finance and Chief Accounting Officer |
| Paul E. Weitzel, Jr. | 46 | Executive Vice President, Corporate Development and International Operations |
| Steven L. Winokur | 45 | Executive Vice President; Chief Financial Officer and Chief Operating Officer    Shared Services |
| Albert Zezulinski | 57 | Executive Vice President, Corporate and Government Affairs |

Charles F. Burns – Mr. Burns joined us in 2003 as Executive Vice President, Business Process Outsourcing. Mr. Burns has nearly 20 years of sales and consulting experience. Prior to joining us, Mr. Burns was a partner in BearingPoint, Inc., formerly KPMG Consulting, Inc., a business systems integrator and full–service consulting firm.

Stephen W. Elliott    Mr. Elliott joined us in 1996 as Senior Vice President, Technology and Chief Information Officer after having provided consulting services to us for the year prior to his arrival. Mr. Elliott became an Executive Vice President in February 1999. Prior to joining us, Mr. Elliott was employed by Electronic Data Systems, a computer services company, for almost 10 years, most recently as Senior Account Manager.

Joshua Gindin, Esq.    Mr. Gindin joined us in May 1998. Prior to joining us, Mr. Gindin was a partner in the law firm of Kessler & Gindin, which had served as our legal counsel since 1986.

Steven Leckerman – Mr. Leckerman joined us in 1995 as Senior Vice President, Collection Operations, became Executive Vice President, U.S. Operations in January 2001, and in August 2003 became Executive Vice President and Chief Operating Officer    Accounts Receivable Management, North America. From 1982 to 1995, Mr. Leckerman was employed by Allied Bond Corporation, a collection company that was a division of TransUnion Corporation, where he served as manager of dialer and special projects.

32

Exhibit E
Page 4 of 4

# 2004 FOR PROFIT CORPORATION
## ANNUAL REPORT

**FILED**
**Jan 09, 2004  08:00 AM**
**Secretary of State**

DOCUMENT # F97000002171

1. Entity Name
NCO FINANCIAL SYSTEMS, INC.

| Principal Place of Business | Mailing Address |
|---|---|
| 507 PRUDENTIAL ROAD HORSHAM, PA 19044  US | 150 CROSS POINT PKWY CORPORATE LEGAL DEPT GETZVILLE, NY 14068  US |

01052004    Chg-P    CR2E034 (10/03)

| 2. Principal Place of Business | 3. Mailing Address |
|---|---|
| Suite, Apt. #, etc. | Suite, Apt. #, etc. |
| City & State | City & State |
| Zip    Country | Zip    Country |

4. FEI Number
23-1670927    ☐ Applied For / Not Applicable

5. Certificate of Status Desired   ☐   $8.75 Additional Fee Required

| 6. Name and Address of Current Registered Agent | 7. Name and Address of New Registered Agent |
|---|---|
| C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD PLANTATION, FL  33324 | Name _____ Street Address (P.O. Box Number is Not Acceptable) _____ City _____ FL  Zip Code |

8. The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida. I am familiar with, and accept the obligations of registered agent.

SIGNATURE: _____

Signature, typed or printed name of registered agent and title if applicable     (NOTE: Registered Agent signature required when reinstating)     DATE

**FILE NOW!!! FEE IS $150.00**
**After May 1, 2004 Fee will be $550.00**

9. Election Campaign Financing Trust Fund Contribution.  ☐   $5.00 May Be Added to Fees

| 10. | OFFICERS AND DIRECTORS | | 11. | ADDITIONS/CHANGES TO OFFICERS AND DIRECTORS IN 11 |
|---|---|---|---|---|
| TITLE | PCD | ☐ Delete | TITLE | ☐ Change  ☐ Addition |
| NAME | BARRIST, MICHAEL J | | NAME | |
| STREET ADDRESS | 507 PRUDENTIAL ROAD | | STREET ADDRESS | |
| CITY-ST-ZIP | HORSHAM, PA  19044 | | CITY-ST-ZIP | |
| TITLE | D | ☐ Delete | TITLE | ☐ Change  ☐ Addition |
| NAME | PIOLA, CHARLES C JR | | NAME | U000000001665 |
| STREET ADDRESS | 507 PRUDENTIAL ROAD | | STREET ADDRESS | 01/12/04-80020-001  150.00 |
| CITY-ST-ZIP | HORSHAM, PA  19044 | | CITY-ST-ZIP | |
| TITLE | S | ☐ Delete | TITLE | ☐ Change  ☐ Addition |
| NAME | GINDIN, JOSHUA | | NAME | |
| STREET ADDRESS | 507 PRUDENTIAL ROAD | | STREET ADDRESS | |
| CITY-ST-ZIP | HORSHAM, PA  19044 | | CITY-ST-ZIP | |
| TITLE | SV | ☐ Delete | TITLE | ☐ Change  ☐ Addition |
| NAME | NOAH, MICHAEL G | | NAME | |
| STREET ADDRESS | 507 PRUDENTIAL ROAD | | STREET ADDRESS | |
| CITY-ST-ZIP | HORSHAM, PA  19044 | | CITY-ST-ZIP | |
| TITLE | CET | ☐ Delete | TITLE | ☐ Change  ☐ Addition |
| NAME | WINOKUR, STEVEN L | | NAME | |
| STREET ADDRESS | 507 PRUDENTIAL ROAD | | STREET ADDRESS | |
| CITY-ST-ZIP | HORSHAM, PA  19044 | | CITY-ST-ZIP | |
| TITLE | EVC | ☒ Delete | TITLE | ☐ Change  ☐ Addition |
| NAME | MCGOWAN, JOSEPH C | | NAME | |
| STREET ADDRESS | 507 PRUDENTIAL ROAD | | STREET ADDRESS | |
| CITY-ST-ZIP | HORSHAM, PA  19044 | | CITY-ST-ZIP | |

12. I hereby certify that the information supplied with this filing does not qualify for the exemption stated in Section 119.07(3)(i) Florida Statutes. I further certify that the information indicated on this report or supplemental report is true and accurate and that my signature shall have the same legal effect as if made under oath; that I am an officer or director of the corporation or the receiver or trustee empowered to execute this report as required by Chapter 607, Florida Statutes; and that my name appears in Block 10 or Block 11 if changed, or on an attachment with all other like empowered.

SIGNATURE: _____    1/5/04    800/227-4000

SIGNATURE AND TYPED OR PRINTED NAME OF SIGNING OFFICER OR DIRECTOR
Michael G. Noah, SR. V.P.

**Exhibit F**
**Page 1 of 1**

### Certificate of Authority to Act for
### NCO Financial Systems, Inc.

I, the undersigned, _MICHAEL J. BARRIST_, as _____ _CEO_ _____ of

NCO Inc. do hereby certify that Joshua Gindin has the authority to act on behalf of

NCO, Inc. in all bankruptcy matters for NCO, Inc..

IN WITNESS HEREOF, I have hereunto signed my name this _November 20, 2003_.

_Barrist, CEO_    NCO Inc. NCO FINANCIAL SYSTEMS, INC

Signed

Corporate seal

Notary Statement

STATE OF _PA_ )

COUNTY OF _Montgomery_ )

ACKNOWLEDGMENT

Before me, the undersigned a Notary Public, in and for said County and State on this _20th_ day of _November_, 2003, personally appeared _Michael J. Barrist_ to me known to be the identical person who subscribed his/her name to the foregoing instrument, as its _CEO_ and acknowledged to me that he/she executed the same as his/her free and voluntary act and deed of such corporation, for the purposes therein set forth.

In Witness Whereof, I have hereunto set my official signature and affixed my official seal the day and year first above written.

My Commission Expires:

_5/21/05_

Notary _Mary Ann Armstrong_

Notarial Seal
Mary Ann Armstrong, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires May 21, 2005

## Exhibit G
## Page 1 of 1

NCO, et al
Documentation Sent
August 26, 2003

| Claimant |
| --- |
| CF/SFC DSO, Inc. |
| CF/SPC |
| CF/SPC 1996, Inc. |
| CF/SPC Ded. Inc. |
| CF/SPC DFD c/o Commericall Financial Services |
| CF/SPC DFD Inc. c/o Sec Mult Asset Rated Trust 1996-4 |
| CF/SPC DFD, INC. |
| CF/SPC NGU |
| CF/SPC NGU Inc. |
| CF/SPC NGU, Inc.,successor to First USA, c/o Securitized Multiple Asset Rated trust |
| CF/SPC smart incl series 1997-4 |
| CF/SPU NGU Inc. |
| CFS, Inc. |
| CFS, Tapri & Terp III |
| CFS/NCO FINANCIAL SYSTEMS, INC. |
| CFSPC NGU, INC. |
| Citibank ( South Dakota) |
| Commercial Financial |
| Commercial Financial Services |
| Commercial Financial Services Etc. |
| Commercial Financial Services, Inc. |
| CS/SPC NGU, INC c/o SEC Nult Asset Rated Trust |
| Dimat Corporation C/O Commercial Financial Services |
| Global Rated Eligible Asset Rated Trust |
| Global Rated Eligible Asset Rated Trust Services, Inc., c/o CFS |
| Global Rated Eligible Asset Rated Trust succ in Int to Chase Manhattan |
| Global Rated Eligible Asset Rated Trust |
| Global Rated Eligible Asset Trust Succ in Into Greenwood Trust Co./Commercial Financial Services, Inc. |
| Global Related Asset Trust C/O Commercial Financial Services Inc. |
| Global Related Eligible Trust Commercial Financial Services, Inc. |
| N American Capital Corp. |
| Nations Bank/NCO Financial Systems |
| NCO Portfolio Funding |
| NCO Portfolio Funding |
| North American Capital Corp |
| North American Capital Corporation assignee of Chase Bank |
| Scrutinized Multiple Asset |
| Securitized Asset Rat |
| Securitized Multip. Asset Rtd. Tr. 1996- suc. to Chase Manhattan Bank |
| Securitized Multiple Asset |
| Securitized Multiple Asset Rated |
| Securitized Multiple Asset Rated C/O CFS |
| Securitized Multiple Asset Rated Trust |
| Securitized Multiple Asset Rated Trust 1997-2 |
| Securitized Multiple Asset Rated Trust 1997-2-Succ. to MBNA Bank |
| Securitized Multiple Asset Rated Trust 1998-1 |
| Securitized Multiple Asset, Rated Trust 1997-3 |
| Securitized Multiple Asset, Rated Trust 1997-5 |

Received (THU)SEP 25 2003 15:26
09/25/2003 15:10 FAX 2154413931          NCO EXECUTIVE 2                    ☑003

NCO, et al
Documentation Sent
August 28, 2003

| | | | |
|---|---|---|---|
| Securitized Multiple Assets | | | |
| Securitized Multiple Assets/ Rated Trust 1997 2 | | | |
| SMART | | | |
| Smart 982 c/o Commercial Financial Services Inc. | | | |
| SMART 984 | | | |
| TAPR VII c/o Commercial Financial Services | | | |
| TAPR VII c/o Commercial Financial Services | | | |
| TAPR VII, LP | | | |
| TAPR VIII LP | | | |
| TARP Limited Partnership | | | |
| TARP VII LP | | | |
| TARP/Securitized Multiple Asset Rated | | | |

**United States Bankruptcy Court for the
Southern District of Georgia**

IN RE:

                                     Case No. 98-50250

           Rhonda C. Harris

_____ Debtor(s) _____ /

## CERTIFICATE OF SERVICE

I, **Drew Stutzman**, Attorney for Ellis, Painter, Ratterree & Adams LLP, the undersigned, do declare that on ____**02/23/06**_____, I served the within Motion for the Recovery of Unclaimed Funds to the US Attorney listed below.

> U.S. Attorney
> PO Box 8970
> Savannah, GA 31412
>
> U.S. Trustee
> PO Box 10230
> Savannah, GA 31412
>
> Sylvia Ford Brown
> Case Trustee
> Post Office Box 10556
> Savannah, GA 31412

I declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: __**02/23/06**__          Respectfully Submitted: _____

                                                    Drew K. Stutzman
                                                    GA Bar No. 000098
                                                    Ellis, Painter, Ratterree & Adams LLP
                                                    PO Box 9946
                                                    Savannah, GA 31412
                                                    Ph: 912-233-9700
                                                    Fx: 912-233-2281